1   RANDALL K. MILLER (subject to admission *pro hac vice*)
2   NICHOLAS M. DEPALMA  (subject to admission *pro hac vice*)
    VENABLE LLP
3   8010 Towers Crescent Drive, Suite 300
    Tysons Corner, VA 22182
    (Phone) 703.905.1449
4   (Fax) 703.821.8949
    Email: rkmiller@venable.com
5         nmdepalma@venable.com

6   CELESTE M. BRECHT (SBN 238604)
    VENABLE LLP
7   2049 Century Park East
    Suite 2100
8   Los Angeles, CA 90067
    (Phone) 310-229-9900
9   (Fax)  310-229-9901
    Email:   cmbrecht@venable.com
10
    Attorneys for Defendants
11
                    **UNITED STATES DISTRICT COURT**
12
                    **CENTRAL DISTRICT OF CALIFORNIA**
13

14  VERISIGN, INC.                          CASE NO.

15                        Plaintiff,        (Case No. 1:14-CV-01749-CMH-MSN
                                            pending in E.D. Va.) _____
16              v.
                                            **VERISIGN, INC.'S NOTICE OF
17  XYZ.COM, LLC AND DANIEL                 MOTION AND MOTION TO
    NEGARI.                                 COMPEL PRODUCTION OF
18                                          DOCUMENTS FROM ICANN;
                          Defendants.       LOCAL RULE 37-1 JOINT
19                                          STIPULATION IN SUPPORT
                                            THEREOF**

20                                          [LOCAL RULE 37-1 JOINT
                                            STIPULATION, DECLARATION OF
21                                          NICHOLAS M. DEPALMA IN
                                            SUPPORT, DECLARATION OF
22                                          JEFFREY A. LEVEE IN OPPOSITION,
                                            AND PROPOSED ORDER FILED
23                                          CONCURRENTLY]

24                                          **DATE:      TBD**
                                            **TIME:      TBD**
25                                          **CTRM:      TBD**
                                            **JUDGE:     TBD**
26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

**TO THE CLERK OF THE COURT, INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS ("ICANN"), ITS COUNSEL AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on _____, 2015, or as soon thereafter as the matter may be heard by the above-entitled Court, located at _____, Los Angeles, California, in the courtroom of the judicial officer to whom the Court may refer this matter, Plaintiff VeriSign, Inc. ("Verisign"), will and hereby does move for an Order compelling the production of documents from ICANN.

This motion is brought on the grounds that on March 31, 2015, Verisign served a document subpoena on ICANN, but ICANN refused to comply with that subpoena.  ICANN's conduct has forced Verisign to seek an order from this Court to enforce the subpoena.  ICANN disagrees that the subpoena should be enforced.

This joint motion is based on the notice of motion and motion, the declarations of Nicholas M. DePalma and Jeffrey A. LeVee, the joint stipulation of the interested parties and the proposed order granting this motion, all of the pleadings and records on file in this action and the underlying action pending in the United States District Court for the Eastern District of Virginia, any oral argument before the Court, and any other matters the Court may request or consider.  A proposed order is lodged herewith.

Dated:  August 5, 2015

VENABLE LLP

By:  */s/ Celeste M. Brecht*
Celeste M. Brecht

Attorneys for VeriSign, Inc.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTORY STATEMENTS .............................................................1

     A.      VERISIGN'S INTRODUCTORY STATEMENT............................1

          **1.**     The Domain Name Industry .....................................1

          **2.**     The Underlying EDVA Litigation.............................3

          **3.**     Deadlines In The Underlying EDVA Litigation .....................3

          **4.**     The Subpoena To ICANN .....................................4

          **5.**     The Documents Requested Are Reasonably Calculated
                To Lead To The Discovery Of Admissible Evidence ..............5

     B.      ICANN'S INTRODUCTORY STATEMENT ................................8

II.     ARGUMENT ....................................................................................10

     A.      VERISIGN'S ARGUMENT.................................................10

     B.      ICANN'S ARGUMENT....................................................12

     C.      ARGUMENT ON INDIVIDUAL REQUESTS ............................14

CONCLUSION...............................................................................24

PLAINTIFF'S MOTION TO COMPEL

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) .......................................................15, 19

*Anderson v. Hale*,
    202 F.R.D. 548, 2001 WL 503045
    (N.D. Ill. 2001) ...............................................................................11

*DCG Sys. v. Checkpoint Techs., LLC*,
    2011 U.S. Dist. LEXIS 142293 (N.D. Cal. 2011) .............................19

*Del Campo v. Kennedy*,
    236 F.R.D. 454 (N.D. Cal. 2006).......................................................10

*Diamond State Ins. Co. v. Rebel Oil Co.*,
    157 F.R.D. 691 (D. Nev. 1994)..........................................................18

*Exxon Shipping Co. v. U.S. Dept. of Interior*,
    34 F.3d 774 (9th Cir. 1994) ...............................................................11

*Facebook, Inc. v. Cyber2media, Inc. and Daniel Negari*,
    No. 4:11-cv-03619-PJH (N.D. Cal. 2011) ..........................................6

*Haworth, Inc. v. Herman Miller, Inc.*,
    998 F.2d 975 (Fed. Cir. 1993) ...........................................................16

*Heat & Control, Inc. v. Hester Industries, Inc.*,
    785 F.2d 1017 (Fed. Cir. 1986)..........................................................11

*In re Yassai*,
    225 B.R. 478 (Bankr. C.D. Cal. 1998) ...............................................12

*Mailhoit v. Home Depot U.S.A., Inc.*,
    285 F.R.D. 566 (C.D. Cal. 2012) .......................................................11

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal.  2005) ......................................................15

*Nidec Corp. v. Victor Co.*,
    249 F.R.D. 575 (N.D. Cal. 2007).......................................................16

*Office Depot Inc. v Zuccarini*,
    596 F.3d 696 (9th Cir. 2010) ..........................................................1, 2

*Ramirez v. Nicholason*,
    CV 06-0546-JM (NLS), 2007 WL 2990283
    (S.D. Cal. Oct. 11, 2007) ..................................................................12

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

PLAINTIFF'S MOTION TO COMPEL

*Schapp v. Exec. Indus., Inc.,*
    130 F.R.D. 384 (N.D. Ill. 1990)..................................................................12

*Syposs v. United States,*
    181 F.R.D. 224 (W.D.N.Y. 1998)..............................................................11

*Truswal Systems Corp. v. Hydro-Air Engineering, Inc.,*
    813 F.2d 1207 (Fed. Cir. 1987)..................................................................13

*White v. Kenneth Warran & Son, Ltd.,*
    203 F.R.D. 364 (N.D. Ill. 2001)..................................................................11

*WPIX, Inc. v. Broad Music, Inc.,*
    CV 11-4052-SJO JEMX, 2011 WL 9753912
    (C.D. Cal. July 5, 2011) ..............................................................................12

**Statutes**

Fed. R. Civ. P. 26..............................................................................................11, 15

Fed. R. Civ. Proc. 45(c)(3)(A)(iv) ..........................................................................15

**Other Authorities**

9 Moore's Federal Practice, § 45.03[1] (Matthew Bender 3d ed.) ............................10

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION TO COMPEL

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

# JOINT STIPULATION

## I.   INTRODUCTORY STATEMENTS

### A.   VERISIGN'S INTRODUCTORY STATEMENT

This motion to compel responses to a non-party subpoena arises out of a false advertising case pending in the United States District Court for the Eastern District of Virginia.  Non-party Internet Corporation for Assigned Names and Numbers ("ICANN") has refused to comply with a subpoena issued by Verisign requiring ICANN to produce certain documents.  Despite the demonstrated efforts and willingness by counsel for Verisign to narrow the issues and resolve this dispute, ICANN refuses to produce any relevant documents but for a single document (a signed contract), the unsigned version of which is publicly available.

### 1.   The Domain Name Industry

Any device connected to the Internet is identified by a unique Internet Protocol ("IP") address, consisting of a series of numbers separated by periods.  *Office Depot Inc. v Zuccarini*, 596 F.3d 696, 698 (9th Cir. 2010) (internal citations and quotations omitted).  Because IP addresses in their bare form are unmemorable, the Domain Name System ("DNS") was created to allow people to more easily remember and find places on the Internet.  ICANN, *Beginner's Guide to Domain Names* 3 (2010), *available at* https://www.icann.org/en/system/files/files/domain-names-beginners-guide-06dec10-en.pdf.

Under this system, IP addresses are given alphanumeric identifiers called domain names.  *Id.*  A domain name consists of a top level domain ("TLD") and second level domains within that TLD.  *Id.*  Top Level Domains can be "generic" such as .COM, .NET, and .ORG or can be "country code" TLDs such as .UK or .US.  A second level domain name are the characters to the left of the last period in the domain name.  *Id.*  For example, "google" is the second level domain name

PLAINTIFF'S MOTION TO COMPEL

1  in "google.com."  Second level domain names are registered within TLDs.  *Office*
2  *Depot, Inc.*, 596 F.3d at 776.

3       ICANN is a nonprofit corporation formed in 1998, and recognized by the
4  United States Government, for the purpose of keeping the Internet secure, stable,
5  and interoperable.  Among other things, ICANN develops DNS policy and
6  contracts with registries and registrars within the domain name industry.  For
7  example, ICANN enters into contracts called Registry Agreements with registry
8  operators for the administration of generic TLDs.  Thus, ICANN has Registry
9  Agreements with Verisign to operate the .COM TLD and with Defendant
10  XYZ.COM, LLC to operate the .XYZ TLD.  Second level domain name
11  registrations (such as google.com) are sold by registrars, who are also contracted
12  parties with ICANN.  Registrars pay a fee to the registry operator for each second
13  level domain name registration sold by the registrar.  DePalma Declaration at ¶ 3.

14       Verisign is, and has since 2000 been, the registry operator for the largest
15  generic TLD ("gTLD"), .COM, along with other gTLDs such .NET and NAME.
16  DePalma Declaration at ¶ 4.

17       In 2008, ICANN approved a program to create new gTLDs in the Internet's
18  addressing system.  As part of ICANN's new gTLD program, applicants for
19  potential new gTLDs were permitted to apply, for a $185,000 fee, for the rights to
20  be the exclusive registry operator for any proposed new gTLD.  Some new gTLD
21  applicants were brand owners, seeking a gTLD for their brands (*e.g.*, ".BMW,"
22  ".SUZUKI").  Others applied for gTLDs that might appeal to groups with
23  particular interests (*e.g.*, ".ATTORNEY" or ".TIRES").  DePalma Decl. at ¶ 5.

24       The defendants in the underlying litigation, XYZ.COM, LLC and Negari,
25  successfully applied and received permission to operate the registry for a new
26  gTLD, ".XYZ."  DePalma Declaration at ¶ 6.

27       Thus, Plaintiff Verisign and Defendants XYZ.COM, LLC and Negari are
28  now competing registry operators.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

2

**2.**   The Underlying EDVA Litigation

A true and correct copy of the Complaint is attached to the DePalma Declaration as Exhibit 1.  The Complaint sets forth a single count for Deceptive Advertising and Unfair Trade under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false or misleading advertising and unfair competition in interstate commerce.

Verisign alleges that Defendants XYZ.COM, LLC and Daniel Negari violated the Lanham Act by engaging in a false and deceptive direct comparative advertising campaign that targeted Verisign's .COM registry (by name).  Specifically, Defendants XYZ.COM, LLC and Daniel Negari made false and misleading statements about:  (a) the lack of availability of .COM domain names (Defendants falsely stated that "the only thing [i.e., second level domain name] that is left is something with a dash, or maybe three dashes and a couple of numbers in it,"); and (b) the number of users who registered second level domain names in the .XYZ registry (*i.e.*, Negari asserted that he had "447,544 domains registered" in the .XYZ registry as of August 2015, but none or almost none of these so called registrations reflect bona fide users but are instead phantom registrations based on a deceptive opt-out "giveaway" scheme).  As alleged in the Complaint, the deceptive opt-out "giveaway" scheme involved the automatic registration of hundreds of thousands of .COM customers for the equivalent .XYZ domain name, on an opt-out basis.  One example out of hundreds of thousands is that Verisign owned the domain name gtld-servers.com, and was automatically registered (without Verisign's permission) for the domain name gtld-servers.xyz.

**3.**   Deadlines In The Underlying EDVA Litigation

Civil litigation moves at a fast pace in the United States District Court for the Eastern District of Virginia (which is well-known as the "Rocket Docket").  The Court issued a scheduling order on March 30, 2015, a copy of which is attached as Exhibit 2 to the Declaration of Nicholas M. DePalma.  The parties were

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

3

not able to engage in discovery until after the issuance of this order.  Under the scheduling order, the parties must complete all discovery by Friday, August 14, 2015.

### 4. The Subpoena To ICANN

On March 31, 2015, the day after discovery in this matter opened, Verisign served a subpoena on ICANN.  The subpoena is attached as Exhibit 3 to the DePalma Declaration.  ICANN served objections on April 14, 2015 (attached as Exhibit 4 to the DePalma Declaration).  ICANN produced just one document responsive to the subpoena (a signed contract, the unsigned version of which is publicly available) and refuses to produce any other documents in response to the following requests:

- No. 4.  All documents and communications reflecting ICANN's decision to permit .XYZ to become a new gTLD including but not limited to ICANN's assessment of the applicant's qualifications under the Application Guidebook.

- No. 5.  All communications between you and XYZ.COM from January 1, 2012 to present concerning Verisign or the .COM gTLD, including but not limited to the availability of unregistered domain names in the .COM gTLD.

- No. 6.  All communications between you and Negari from January 1, 2012 to present concerning Verisign or the .COM gTLD, including but not limited to the availability of unregistered domain names in the .COM gTLD.

- No. 8.  All documents regarding the .XYZ gTLD, XYZ.COM and/or Daniel Negari from January 1, 2012 to present.

- No. 9.  All documents reflecting any assessments, discussions, or conclusions regarding or relating to the availability of unregistered domain names in the .COM gTLD.

PLAINTIFF'S MOTION TO COMPEL

- No. 11.  All reports submitted by XYZ.COM or Negari to ICANN, including but not limited to reports relating to any self-auditing requirements for the .XYZ gTLD.

- No. 12.  All complaints, inquiries or any other communications received by ICANN regarding or relating to the .XYZ gTLD, XYZ.COM or Negari, including, without limitation, complaints relating to the XYZ Promotion.

- No. 13.  All documents relating to or arising from any inquiry, review or investigation by ICANN regarding the .XYZ Promotion, the .XYZ gTLD and/or the Defendants.

- No. 16.  All documents reflecting any conduct by any registrar or registry that is similar to the XYZ Promotion.

**5.**  The Documents Requested Are Reasonably Calculated To Lead To The Discovery Of Admissible Evidence

The documents sought are reasonably calculated to lead to the discovery of admissible evidence in the pending suit.

**First**, as the organization that approved Defendants' application to operate the .XYZ registry, ICANN evaluated whether Defendants would lawfully operate their registry.  *See* Applicant Guidebook version 2012-06-04, Module 1, *Introduction to the gTLD Application Process* at 1-21 ("ICANN will perform background screening in only two areas: (1) General business diligence and criminal history; and (2) History of cybersquatting behavior") *available at* http://newgtlds.icann.org/en/applicants/agb/guidebook-full-04jun12-en.pdf (last visited June 23, 2015).

Yet we have learned that Defendants have a history of engaging in unlawful online conduct like cybersquatting that raises questions about XYZ.COM's eligibility under the new gTLD program to be a registry operator.  *See Facebook, Inc. v. Cyber2media, Inc. and Daniel Negari*, No. 4:11-cv-03619-PJH (N.D. Cal.

5

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

2011) (discussing that Negari maintains typosquatter names, and has "registered, used, and trafficked in typosquatter domain names in the past) (Compl. ¶ 44). Verisign is entitled to discover the documents and information that ICANN used to evaluate Defendants' history of potential unlawful conduct and how ICANN concluded in view of that evaluation that Defendants should be awarded a new gTLD.  It is possible, for example, that the Defendants withheld important information from ICANN which, if disclosed, might have disqualified Defendants from being awarded the .XYZ gTLD.   Documents requested under Document Request No. 4 are critical to Verisign in determining the answer to this question. Such deception, if substantiated, is highly relevant to the false advertising claim if Defendants' deceptive and fraudulent scheme (as alleged in the Complaint) was actually conceived and hatched as part of the ICANN new gTLD application process.

**Second**, ICANN audits registry operators for compliance with its contracts. For example, under Section 2.11 of the Registry Agreement between ICANN and Defendant XYZ.COM, LLC "ICANN may from time to time (not to exceed twice per calendar year) conduct, or engage a third party to conduct, contractual compliance audits to assess compliance by Registry Operator with its representations and warranties contained in Article 1 of this Agreement and its covenants contained in Article 2 of this Agreement."  *See* XYZ Registry Agreement, § 2.11, *available at* https://www.icann.org/sites/default/files/tlds/xyz/xyz-agmt-pdf-05dec13-en.pdf (last visited June 23, 2015).

XYZ.COM, LLC's covenants set forth in Articles 1 and 2 include promises that (i) "all material information provide and statements made in the registry TLD application . . . were true and correct . . . and such information or statements continue to be true and correct . . ." (§ 1.3(a)(i)); (ii) that it will comply with all policies (§ 2.2); and (iii) that it will protect the legal rights of third parties (§ 2.8).

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

6

Here, Verisign has learned through other discovery that ICANN in fact attempted to investigate Defendants' deceptive "giveaway" scheme under these contractual provisions. Verisign has received information marked under a Protective Order as "Attorneys Eyes Only" regarding Defendants' response to ICANN's audit of the scheme, which bears significantly on the allegations in the Complaint and makes discovery of ICANN's investigation of the deceptive scheme and the results therefrom highly relevant. Verisign believes that ICANN's records including Defendants' response to ICANN's audit, coupled with Defendants' broad and planned scheme to defraud the public through false advertising, will demonstrate an intent to deceive. Moreover, Defendants may attempt to rely on ICANN's audit as a "shield" to support their argument that their opt-out scheme was not deceptive. Verisign needs ICANN's evaluation of Defendants' audit response to rebut that defense.

Further, ICANN has received formal and informal complaints about Defendants' conduct at issue in this case, which are also responsive to the document requests. Verisign is entitled to learn the identity of these individuals and the substance of their complaints in part because the complainants could be fact witnesses in Verisign's underlying case against .XYZ. Verisign is also entitled to know the conclusions ICANN reached in any investigation of each complaint and the basis for such conclusions.

**Third**, ICANN itself made statements regarding .the availability of .COM domain names which are similar—surprisingly similar—to those made by Defendant Negari. For example, in January 2014 ICANN told industry analysts that: "In the .com today, you cannot find any string—and I mean any string—that has five characters or less in it." *See* DePalma Decl. at ¶ 14. While this is an untrue statement, it mirrors the false statement made by Negari: "The only thing that is left is something with a dash, or maybe three dashes and a couple of numbers in it." Compl. ¶ 27. Verisign is entitled to discover from ICANN what,

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

if any, discussions, influence or involvement Negari had with respect to the statements made by ICANN.  If Negari corresponded with ICANN on this topic, such documents would be highly relevant to establishing whether Negari's scheme extended beyond its direct public statements to include influencing ICANN to further Defendants' fraudulent scheme.

**Fourth,** ICANN has a close relationship with Negari because it selected his company to operate the .XYZ registry and then used him as an exemplar for ICANN's new TLD program on social media.  On October 12, 2013, ICANN tweeted:  "A young entrepreneur explains his goals for launching a new gTLD, .xyz."  *See* https://twitter.com/ICANN.  ICANN then linked the tweet to a video of Negari.  *Id.*  Clearly, ICANN developed a particular interest in the success of the .XYZ registry.  ICANN's unique promotion of the success of one gTLD—.xyz—in a program with over one thousand new gTLDs is striking and suggests that ICANN and Defendant Negari were in unusually close coordination.[1]  This close coordination no doubt is memorialized ICANN's internal documents.  Such documents would be relevant because they may reflect the deceptive business plans and Defendants, and could document Defendant's manipulation of ICANN regarding the disparagement of Verisign's .COM gTLD.

**B.     ICANN'S INTRODUCTORY STATEMENT**

Verisign served the instant Motion on ICANN over a month after the parties' last meet and confer session, thereby abruptly ending an extremely unusual meet and confer process that ICANN believed was still ongoing.  (See Declaration

---

[1]   Industry commentators have recognized the close relationship between ICANN and Negari.  *See* http://www.thedomains.com/2013/10/12/icann-makes-domain-investor-daniel-negari-the-poster-boy-for-the-new-gtld-program-in-video-released-tonight/ (last visited 6/15/2015).

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

PLAINTIFF'S MOTION TO COMPEL

of Jeffrey A. LeVee ("LeVee Decl.").)[2]  Verisign's Motion omits from its briefing nearly all of the meet-and-confer process, and fails to acknowledge that ICANN in fact agreed to produce documents in response to some of Versign's requests but was waiting for Verisign to respond to other inquiries before producing in the hope that Verisign would narrow some of its incredibly overbroad requests.  (*Id.* ¶ 14.) Rather than respond to ICANN as promised, Versign disappeared for over a month, reappearing not to continue the productive meet and confer, but rather to file the instant Motion.  (*Id.* ¶ 12.)

The requests Verisign moves to compel are extremely overbroad and would impose a substantial burden on ICANN.  Verisign's claim in the underlying litigation is limited to a single claim alleging that Defendants have engaged in a false and deceptive advertising campaign with respect to the .XYZ gTLD that Defendants operate.  Despite repeated requests by ICANN, Verisign has refused to narrow its requests that typically seek "all documents" relating to Defendants.  As explained in further detail below, Verisign's requests would require ICANN to

---

[2]  As ICANN's counsel Jeffrey LeVee explains in his declaration, VeriSign served its subpoena on ICANN on March 31, 2015, and ICANN served its objections on April 14, 2015.  (LeVee Decl. ¶ 7.)  Thereafter, more than one month passed without any contact from Verisign.  (*Id.* ¶ 8.)  Verisign and ICANN finally met-and-conferred on May 29, 2015.  (*Id.* ¶ 5.)  Verisign's counsel sent ICANN's counsel an email that same day, confirming that he was checking to see whether Verisign could narrow some of the document requests.  (DePalma Decl. Ex. 5 (May 29, 2015 Email from N. DePalma to J. LeVee).)  On June 8, 2015, the parties spoke again with respect to certain specific requests, and ICANN was under the impression that Verisign would respond further with respect to the other document requests.  (LeVee Decl. ¶¶ 11-12; DePalma Decl. Ex. 6 (June 28, 2015 Emails between N. DePalma, J. LeVee, and R. Zernik).)  ICANN sent a confirming email that same day, noting that litigants should be required to obtain documents from other litigants in the action before burdening a non-party such as ICANN.  (*Id.* (June 28, 2015 Email from J. LeVee to N. DePalma).)  Five weeks passed.  (LeVee Decl. ¶ 12.)  Then, without any notice, Verisign served its portion of the Motion on July 15, 2015, without attempting to resume or conclude the meet-and-confer process.  (*Id.*)

PLAINTIFF'S MOTION TO COMPEL

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1    search the files of multiple different custodians for documents that have no

2    conceivable connection to Verisign's single claim against Defendants.

3        Compounding the undue burden, many of Verisign's requests seek

4    documents that are in the possession of <u>Defendants</u> because Defendants created the

5    documents in the first instance.  Versign has never explained to ICANN (nor does

6    it explain in this Motion), why it needs to obtain these documents from ICANN, a

7    non-party, rather than from the Defendants.  In the absence of such explanation,

8    Verisign's subpoena improperly shifts the burden of discovery to a non-party and

9    should be quashed.

10   **II.**   **ARGUMENT**

11       **A.**   **VERISIGN'S ARGUMENT**

12       The scope of material obtainable by a Rule 45 subpoena is as broad as

13   permitted under the discovery rules.  *See Del Campo v. Kennedy*, 236 F.R.D. 454,

14   457 (N.D. Cal. 2006) ("The Advisory Committee Notes to the 1970 Amendments

15   to Rule 45 state that the "scope of discovery through a subpoena is the same as that

16   applicable to Rule 34 and other discovery rules.").  Rule 26(b)(1) governs the

17   scope of documents the production of which can be requested for discovery

18   purposes under Rule 45.  *See* 9 Moore's Federal Practice, § 45.03[1] (Matthew

19   Bender 3d ed.); *see also, Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d

20   1017 (Fed. Cir. 1986) ("Rule 45(b)(1) must be read in light of Rule 26(b)") and

21   *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)

22   (applying both Rule 26 and Rule 45 standards to rule on a motion to quash); *Syposs*

23   *v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998).  Thus, discovery of

24   ICANN's documents are allowable under Fed. R. Civ. P. 26, which enables a party

25   to "obtain discovery regarding any matter, not privileged, that is relevant to the

26   claim of defense of any party . . . ."

27       Relevancy under Rule 26 is construed broadly to encompass "any matter that

28   bears on, or that reasonably could lead to other matter[s] that could bear on, any

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

PLAINTIFF'S MOTION TO COMPEL

issue that is or may be in the case."  *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012).  "Liberal discovery is permitted in federal courts to encourage full disclosure before trial."  *White v. Kenneth Warran & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001).  "The minimal showings of relevance and admissibility hardly pose much of an obstacle for an inquiring party to overcome."  *Anderson v. Hale*, 202 F.R.D. 548, 2001 WL 503045, at *3 (N.D. Ill. 2001).

A party opposing discovery has the burden of showing that discovery should not be allowed.  *Ramirez v. Nicholason*, CV 06-0546-JM (NLS), 2007 WL 2990283, at *2 (S.D. Cal. Oct. 11, 2007); *see also In re Yassai*, 225 B.R. 478, 483-84 (Bankr. C.D. Cal. 1998) (party asserting that discovery request is unduly burdensome bears heavy burden of proof).  To meet this burden, the objecting party must "specifically detail the reasons why each [request] is irrelevant . . ."  *Schapp v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990).

Here, ICANN cannot meet its burden.  *See WPIX, Inc. v. Broad Music, Inc.*, CV 11-4052-SJO JEMX, 2011 WL 9753912 (C.D. Cal. July 5, 2011) ("A district court whose only connection with a case is supervision of discovery ancillary to an action in another district court should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder.'  Where relevance is in doubt . . . the court should be permissive.") (citing *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)).  ICANN has failed to detail how Verisign's request is either irrelevant or unduly burdensome, and should therefore be compelled to comply with the subpoena and provide the requested documents.

The documents requested in the subpoena pertain directly to issues relevant to Verisign's burden of proof for its case.  The requested documents are relevant to liability and damages.  For example, the intent of Defendants XYZ.COM, LLC and Daniel Negari in making the false statements is relevant to establishing that the underlying action is an "exceptional case" under the Lanham Act to warrant a fee

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

11

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

award.  The complaints ICANN received about Defendants' unlawful scheme are relevant to prove liability, discover potential fact witnesses, and are relevant to causation and damages.  Similarly, documents bearing on the basis for ICANN's own statements about the availability of .COM domain names are relevant because Verisign must learn whether and to what extent ICANN was deceptively influenced into making these false statements by Defendants.

**B.    ICANN'S ARGUMENT**

Verisign has brought a single claim against Defendants alleging a violation of the Lanham Act in connection with an allegedly false and deceptive advertising campaign involving:  (1) statements about the availability of second-level domain names on Verisign's .COM gTLD; and (2) the number of second-level domain names registered on Defendants' .XYZ gTLD.  Despite the limited nature of Verisign's claims, Verisign has served extremely broad requests on ICANN, a non-party.  Among those requests are requests for "all documents" relating to the Defendants and "all documents" reflecting ICANN's review of XYZ.com's application for .XYZ.  (Request Nos. 4 and 8.)

In its Introductory Statement, Verisign provides background regarding ICANN's New gTLD Program and indicates that ICANN performs various reviews of new gTLD applications.  Verisign's explanation, however, includes only a small subset of the reviews that ICANN undertakes.  In addition to the background screening mentioned by Verisign (which looks a new gTLD applicants' general business diligence and criminal history, including history of cybersquatting), ICANN performs a multi-stepped and quite lengthy "Initial Evaluation" on each new gTLD application.

Specifically, the Initial Evaluation includes four "string reviews."  Those string reviews include a string similarity review (which looks at whether the string is confusing similar to other existing or applied-for gTLDs), a reserved names review (which looks at whether the string is on a list of reserved names), a DNS

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  stability review (which looks at the effect the string might have on the stability of

2  the DNS), and a geographic names review (for strings that represent geographic

3  names, looking at whether the application has the support of governments in the

4  relevant geographic region).  (*See* LeVee Decl. ¶ 2.)

5      Following the string reviews, ICANN also performs multiple reviews

6  relating to the new gTLD application.  Specifically, ICANN reviews the

7  applicant's:  (1) technical and operational capabilities; (2) financial capability; and

8  (3) proposed registry services (for potential DNS stability issues).  (*Id*. ¶ 3.)

9      These multiple reviews are conducted by different groups within ICANN, as

10  well as by third-party vendors.  (*Id*. ¶ 4.)  Verisign's requests seeking all

11  documents relating to Defendants, including all documents related to ICANN's

12  review of Defendants' new gTLD application, would require ICANN (a non-party)

13  to undertake the onerous burden of reviewing the files of dozens of custodians.

14  Yet, even when asked, Verisign provides no explanation as to how the vast

15  majority of these documents could have even the slightest relevance to Verisign's

16  single claim against Defendants.

17      In addition to the fact that Verisign's requests are overbroad, many of

18  Verisign's documents seek documents that Verisign should obtain from

19  Defendants (e.g., parties to the underlying litigation) rather than burdening ICANN

20  with the obligation to search for and produce such documents.  During the meet

21  and confer sessions, ICANN repeatedly asked Verisign whether it had requested

22  such documents from Defendants and why it was appropriate to burden a non-party

23  with the production of such documents; Verisign never responded.  (LeVee Decl.

24  ¶ 17; DePalma Decl. Ex. 6 (June 8, 2015 Email from J. LeVee to N. DePalma).)

25      Verisign's attempt to shift the burden of discovery to a non-party is

26  inappropriate.  Fed. R. Civ. Proc. 45(c)(3)(A)(iv) protects subpoenaed parties from

27  "undue burden," and Fed. R. Civ. Proc. 26 provides that a court may limit

28  discovery if "the discovery sought . . . is obtainable from some other source that is

13

more convenient, less burdensome, or less expensive."  Accordingly, courts agree that it is inappropriate to impose the burden of discovery on a third-party where the documents sought are equally available from a party to the litigation.  *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal.  2005) (quashing subpoena where plaintiffs "h[ad] not shown that they h[ad] attempted to obtain [the requested] documents from defendants"); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (where subpoena sought documents in the possession of parties to the litigation, "[t]he burden on the third party . . .  outweigh[ed] the likely benefit of the subpoena at least in the absence of a convincing showing that the subpoena [was] likely to yield unique and material evidence from the third party."); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (rejecting defendants' argument that the non-party's files might not be identical to the party opponent's files and holding that "the district court could properly require [defendant] to seek discovery from its party opponent before burdening the nonparty [] with this ancillary proceeding").

For these reasons, and as explained in more detail in ICANN's response to Verisign's individual requests below, Verisign's Motion to Compel should be denied.

## C.    ARGUMENT ON INDIVIDUAL REQUESTS

**Request No. 4:**  All documents and communications reflecting ICANN's decision to permit .XYZ to become a new gTLD including but not limited to ICANN's assessment of the applicant's qualifications under the Application Guidebook.

**ICANN's objection**:  ICANN objected on the grounds of "vague and ambiguous," "overbroad in scope and time, unduly burdensome, and seeks information that is [not relevant]."  ICANN also objected on the grounds of

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  "attorney-client privilege, attorney work product doctrine, and/or any other

2  applicable privilege or protection."

3       **Verisign's argument for production**.  This request is relevant for the

4  reasons described in Section II(A)(4) (first reason) supra to establish liability,

5  prove that the underlying action is an "exceptional case" under the Lanham Act,

6  demonstrate causation and damages, and uncover additional facts germane to the

7  litigation.

8       **ICANN's argument against production.**  As discussed above, there are

9  multiple evaluations involved in what Verisign refers to as "ICANN's decision to

10  permit" an applicant to obtain a new gTLD.  Specifically, after performing an

11  extensive background screening (which investigates a new gTLD applicants'

12  general business diligence and criminal history, including history of

13  cybersquatting), ICANN performs a multi-stepped and very lengthy "Initial

14  Evaluation" on the new gTLD application, which includes numerous reviews both

15  of the applicant's applied-for string and of the applicant itself.  (*See* New gTLD

16  Applicant Guidebook.)

17       Verisign's exceedingly broad request purports to seek information regarding

18  each of the multiple review processes performed by ICANN and its third-party

19  vendors.  The vast majority of those reviews (for example, all of the reviews of the

20  .XYZ string, and the review of Defendants' technical capabilities) have no possible

21  bearing on Verisign's claims, which relate exclusively to XYZ.com's statements

22  about the availability of domain names on the .COM gTLD.

23       During the meet and confer sessions, ICANN repeatedly explained the

24  multiple layers of review involved in the New gTLD Program (which Verisign

25  knows well insofar as Verisign was associated with multiple new gTLD

26  applications).  In light of this, ICANN repeatedly requested that Verisign limit its

27  request to documents that could conceivably relate to Verisign's claims.  (LeVee

28  Decl. ¶ 13; May 29, 2015 Email from N. DePalma to J. LeVee; June 8, 2015 Email

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

15

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

from J. LeVee to N. DePalma.)  Verisign's counsel agreed to explore whether he could narrow the request but ultimately never proposed any narrowed request. (LeVee Decl. ¶ 13; May 29 2015 Email from N. DePalma to J. LeVee.)  Request No. 4 seeks only information that is completely irrelevant to the dispute between Verisign and XYZ.COM, and searching for responsive documents would be extremely burdensome for ICANN, which would have to check the records of dozens of custodians in order to obtain the requested information.

**Request No. 5:**  All communications between you and XYZ.COM from January 1, 2012 to present concerning Verisign or the .COM gTLD, including but not limited to the availability of unregistered domain names in the .COM gTLD.

**ICANN's objection:**  ICANN objected on the grounds of "overbroad in scope and time, unduly burdensome, and seeks information that is [not relevant]."

**Verisign's argument for production.**  This request is relevant for the reasons described in Section II(A)(4) (third and fourth reasons) supra to establish liability, demonstrate causation and damages, and uncover additional facts germane to the litigation.

ICANN has argued that Verisign can also seek these documents from Defendants.  *See Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994) ("The court recognizes the apparent duplication of portions of the separate discovery requests served upon Western General and Diamond State. However, although they are duplicative in part, the discovery requests have been directed toward two separate business entities (i.e., Western General and Diamond State) and the documents actually maintained in the files of each entity may not be identical.").  ICANN has not made and cannot make a showing that its files are "identical" to those of the Defendants.  Moreover, Defendants stand accused of making false statements and thereby repeatedly deceiving the public.  Verisign is entitled to use nonparty discovery to ensure that it has all relevant documents so that Defendants cannot further their deception by withholding (or destroying) such

16

documents.

**ICANN's argument against production.**  Strangely absent from Verisign's argument is the fact that ICANN has already agreed to produce the requested documents, subject to limitations agreed upon by the parties.  Specifically, at ICANN's request, Verisign identified the names of ICANN custodians most likely to have communicated with XYZ.com or Daniel Negari—Akram Atallah, Fadi Chehade, Daniel Halloran, Krista Papac, Christine Willett, Cyrus Namazi, and Kurt Pritz—and ICANN agreed to produce responsive documents from these custodians, who are senior level ICANN employees most likely to have had such communications with Defendants if any such communications occurred.  (May 29, 2015 Email from N. DePalma to J. LeVee; June 8, 2015 Email from J. LeVee to N. DePalma.)  By the time of the hearing on this matter, ICANN will have produced all responsive documents, if any, from these custodians.[3]

**Request No. 6.**  All communications between you and Negari from January 1, 2012 to present concerning Verisign or the .COM gTLD, including but not limited to the availability of unregistered domain names in the .COM gTLD.

**ICANN's objection:**  Same as ICANN's objection to Request No. 5.

**Verisign's argument for production.**  The Court should compel production for the same reasons stated above in response to Request No. 5.

**ICANN's argument against production.**  As stated above in response to Request No. 5, subject to a limitation on the number of custodians whose files it must search, to which Verisign agreed,  ICANN has already agreed to produce

---

[3]   Without the restriction on the number of custodians, Verisign's request is overbroad and unduly burdensome. *See DCG Sys. v. Checkpoint Techs., LLC*, 2011 U.S. Dist. LEXIS 142293 (N.D. Cal. 2011) (requiring parties to limit discovery to a limited set of custodians, noting that that restriction "address[ed] the imbalance of benefit and burden resulting from email production").  ICANN also notes that, as Verisign concedes, Request No. 5 seeks documents that Verisign could obtain from the parties to the litigation.

17

documents in response to Request No. 6.  (May 29, 2015 Email from N. DePalma to J. LeVee; June 8, 2015 Email from J. LeVee to N. DePalma.)  Prior to the hearing, ICANN will produce responsive documents, if any, subject to this limitation.

**Request No. 8:**  All documents regarding the .XYZ gTLD, XYZ.COM and/or Daniel Negari from January 1, 2012 to present.

**ICANN's objection:**  Same as ICANN's objection to Request No. 4.

**Verisign's argument for production.**  The Court should compel production for the same reasons stated in Verisign's Request No. 4.

**ICANN's argument against production.**  ICANN repeatedly asked Verisign to narrow this egregiously overbroad request, which literally seeks every document ICANN might have in its possession regarding the Defendants on *any* topic.  Versign agreed to look into limiting the scope of Request No. 8 but never made a proposal.  (DePalma Decl. Ex. 5 (May 29, 2015 Email from N. DePalma to J. LeVee); *id.* Ex. 6 (June 8, 2015 Email from J. LeVee to N. DePalma).)

As drafted, this request is incredibly broad, and is not limited to documents that could contain information relevant to Verisign's claim against XYZ.com and Daniel Negari for misleading advertising.  As discussed above, ICANN has numerous levels of review for new gTLD applications, the vast majority of which are completely irrelevant to Verisign's claim against .XYZ.  ICANN also has various documents related to the operations of the .XYZ gTLD that obviously have no bearing on whether Defendants have made representations that violate the Lanham Act.  Verisign has provided no justification for requiring ICANN to search thousands of documents from dozens of custodians, and to produce a mass of documents of which only a small subset may be potentially relevant.

**Request No. 9:**  All documents reflecting any assessments, discussions, or conclusions regarding or relating to the availability of unregistered domain names in the .COM gTLD.

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

PLAINTIFF'S MOTION TO COMPEL

**ICANN's objection:**  Same as ICANN's objection to Request No. 4.

**Verisign's argument for production.**  The Court should compel production for the same reasons stated in Verisign's Request No. 4.

**ICANN's argument against production.**  Verisign does not mention in its papers that Verisign has also accused ICANN of making allegedly false statements in conjunction with certain statements that an ICANN executive made with respect to the number of available names in the .COM registry.  The accusations began with a letter that Verisign's general counsel wrote to ICANN in January 2014.  Verisign and ICANN subsequently have exchanged various correspondence related to Verisign's concerns.  Verisign has not asserted any claims against ICANN but has reserved its right to do so.  (LeVee Decl. ¶ 15.)

Request No. 9 specifically asks for documents that would be directly relevant to the litigation that Verisign has reserved the right to file against ICANN.  Thus, ICANN objected to Request No. 9 and stated that it would not produce documents in response to a subpoena issued in the present lawsuit, particularly since it has nothing to do with ICANN conduct.  (*Id*. ¶ 16.)

The only argument Verisign has for the relevance of these documents to its claims again XYZ.com is that "[i]f Negari corresponded with ICANN on this topic, such documents would be highly relevant to establishing whether Negari's scheme extended . . . to include influencing ICANN to further Defendants' fraudulent scheme."  However, ICANN has already agreed to produce any such communications in response to Requests Nos. 5 and 6 (and, of course, such documents should be in Defendants' possession in all events).  Verisign has no justification for seeking ICANN's internal documents regarding this topic in order to conduct a fishing expedition on claims that Verisign has reserved the right to bring claims against ICANN.

**Request No. 11:**  All reports submitted by XYZ.COM or Negari to ICANN, including but not limited to reports relating to any self-auditing requirements for

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

the .XYZ gTLD.

**ICANN's objection:** ICANN objects as "vague and ambiguous as to the phrase reports relating to any self-auditing requirements." ICANN also objects as overbroad, relevance, and burden (because ICANN claims these materials can be discovered from Defendants).

**Verisign's argument for production.** This request is relevant for the reasons described in Section II (A)(4) (second reason) supra to establish liability, prove that the underlying action is an "exceptional case" under the Lanham Act, demonstrate causation and damages, and uncovering additional facts germane to the litigation.

**ICANN's argument against production.** ICANN asked for clarification regarding was sort of "reports" Verisign sought, and what "self-auditing requirements" Verisign was referencing, again explaining the many layers of review to which both potential and delegated gTLDs are subject and various types of reporting the delegated gTLDs are required to provide. (LeVee Decl. ¶ 17; DePalma Decl. Ex. 5 (May 29, 2015 Email from N. DePalma to J. LeVee); *id.* Ex. 6 (June 8, 2015 Email from J. LeVee to N. DePalma).) Verisign's counsel never provided any clarification. (LeVee Decl. ¶ 17.)

In any event, the auditing requirements would be with respect to XYZ.COM's registry agreement, and would not address "marketing issues"; as a result, the documents would not be relevant to Verisign's claims. Further, Verisign has not explained whether it has attempted to obtain these documents from Defendants, or why it would be unable to do so as they are reports prepared by Defendants. (*Id.*)

**Verisign's argument on Request Nos. 12-13.** These requests seek complaints from third parties and documents relating to ICANN's investigation into Defendants' unlawful activities.

Verisign does not set forth the language of these requests or ICANN's

20

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

objections because ICANN has conceded that they seek relevant information and ICANN has represented that it has collected responsive documents.  The sole issue regarding these requests is that ICANN refuses to produce this information under the existing protective order, which provides for a high tier of "Attorney's Eyes Only" review).  DePalma Decl. Exhibit 7.  Instead, ICANN insists on an "Outside Counsel's Eyes Only" tier that is inappropriate for these request or this litigation. The court in the underlying action specifically rejected Defendants' attempt to obtain a protective order containing this restriction and instead entered an order that permits select Verisign in-house counsel to review documents marked with the higher classification.  *See* DePalma Decl. at ¶ 21.  ICANN has not sought to intervene in the underlying action to modify the protective order in this manner and it cannot demonstrate that the documents requested require such a draconian designation.  This is particularly so here, where (as explained above and in the DePalma Declaration), the parties to the underlying litigation have already briefed the issue and the Court has already refused to order an "Outside Counsel's Eyes Only" protective order classification.

ICANN's attempt to impose an "Outside Counsel's Eyes Only" protective order would subvert the discovery structure already established by the trial court in the underlying litigation.  DePalma Decl. at ¶ 22.  This Court should not permit ICANN to unwind the heavily litigated protective order entered by the United States District Court for the Eastern District of Virginia.

**ICANN's argument on Request Nos. 12-13.**  As Verisign acknowledges, ICANN has collected these documents and is prepared to produce them.  (LeVee Decl. ¶ 18; June 8, 2015 Email from J. LeVee to N. DePalma.)  The documents sought by Request Nos. 12-13 include highly confidential business information of ICANN and XYZ.com.  ICANN believes that it would be inappropriate to produce those documents without a protective order allowing for a "Confidential – Outside Counsel Only" designation that would prevent Verisign's inside lawyers from

21

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

seeing these materials.  Verisign is a direct competitor of XYZ.com, and Verisign and ICANN are frequently on the other end of the negotiating table regarding a myriad of issues.

During the meet and confer, Verisign represented that the issue had been litigated by the court in Virginia, and that Versign had prevailed in its opposition to a protective order including an outside counsel only designation.  ICANN requested that Versign forward documents (*i.e.*, briefing and bench order) reflecting that the Virginia District Court had in fact resolved this issue.  (DePalma Decl. Ex. 6 (June 8, 2015 Email from J. LeVee to N. DePalma).)  Verisign never did so, and other than a reference to the documents in the DePalma declaration attached to its Motion to Compel, Verisign still has not made these documents available to ICANN or this court.  (*Id.* ¶ 19.)

If, however, the Virginia District Court has issued a protective order that permits an "Confidential – Outside Counsel Only" designation that allows Verisign's inside lawyers to see such materials, then ICANN objects to that designation and requests that this Court order that such documents not be made available to Verisign's in-house lawyers.

**Request No. 16:**  All documents reflecting any conduct by any registrar or registry that is similar to the XYZ Promotion.[4]

**ICANN's objection:**  ICANN objects to this as vague and ambiguous, that it requires ICANN to make a "legal conclusion," that it is overbroad, irrelevant, and requests attorney-client, work product, or other privileged information.

**Verisign's argument for production.**  Verisign has reason to believe through discovery in this matter that registrars, in addition to Network Solutions,

---

[4]  The "XYZ Promotion" is defined in the subpoena to refer to the giveaway of domain names in the .XYZ registry by registrars, including Network Solutions, on an opt-out basis.

PLAINTIFF'S MOTION TO COMPEL

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  have engaged in similar giveaway promotions on behalf of Defendants.  Thus, this

2  request is relevant for the same reasons that Verisign's other requests are relevant.

3  If ICANN has investigated or is aware of other registrars engaging in the same

4  conduct on behalf of Defendants that is at issue in this case, then it would further

5  strengthen Verisign's case against .XYZ by showing that .XYZ's domain name

6  registrations are in fact false and misleading.  Moreover, the Defendants have

7  argued that the opt-out giveaway scheme, and more particularly, the advertising

8  about the scheme, were not improper.  Verisign is entitled to know whether

9  ICANN has knowledge of other registries engaging in similar conduct—which is

10  unlikely—so that Verisign can rebut .XYZ's assertion.

11  **ICANN's argument against production.**  Request No. 16 was not

12  addressed in the parties' email correspondence, and ICANN's counsel reasonably

13  believed that Verisign had agreed to withdraw this request since it was never

14  raised.  (LeVee Decl. ¶ 20.)  The request is ill-framed and incredibly overbroad,

15  and it is unclear how ICANN could possibly undertake to even begin searching for

16  responsive documents.

17  ICANN received 1,930 applications for new gTLDs; 698 of those new

18  gTLDs are currently operational.  *See* http://newgtlds.icann.org/en/program-

19  status/statistics.  There are hundreds of current registries of new gTLDs and over

20  1,300 ICANN-accredited registrars.  Verisign's request for "all documents"

21  reflecting "any conduct" by "any registrar or registry" engaged in "conduct similar

22  to the XYZ Promotion" is so overbroad and vague as to be unintelligible.  There is

23  no feasible way to search for this type of information as the request is currently

24  drafted.

25  If Verisign were interested in the behavior of a particular third-party

26  registrar or registry, then it should have raised this with ICANN during the meet

27  and confer process, which it never did.  Furthermore, if Verisign believes that other

28  non-parties have committed allegedly wrongful acts, Verisign should serve

23

1  subpoenas on those non-parties, not ask ICANN to embark on the overly

2  burdensome task of determining if one of the thousands of registrars and registries

3  at some point somehow impugned Verisign or engaged in what Verisign believes

4  to be unfair promotional practices.

5  **<u>CONCLUSION</u>**

6      For the foregoing reasons, Verisign respectfully requests that this Court

7  enter an Order compelling ICANN to produce the requested documents as

8  described more particularly above, and ICANN respectfully requests that this

9  Court deny Verisign's Motion.

10

11  Dated:  August 5, 2015            VENABLE LLP

12                              By:  */s/ Celeste M. Brecht*
                                     Celeste M. Brecht

13                                   Attorneys for VeriSign, Inc.

14

15  Dated:  August 5, 2015            JONES DAY

16                              By:  */s/ Jeffrey A. LeVee*
                                     Jeffrey A. LeVee
17                                   Attorneys for ICANN

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO COMPEL